UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

KIMBERLY NORRELL, d/b/a The Dainty
Doe,

                Plaintiff,

       v.

THE INDIVIDUALS, BUSINESS ENTITIES,
AND UNINCORPORATED ASSOCIATION
IDENTIFIED ON SCHEDULE A,

                Defendants.

Civil Action No. 1:23-cv-238

## COMPLAINT

Plaintiff Kimberly Norrell, doing business as The Dainty Doe, asserts the following claims for copyright infringement against the Defendants who are the individuals, corporations, limited liability companies, partnerships, and unincorporated associations identified on Schedule A attached here and alleges as follows:

## INTRODUCTION

1.    This action has been filed by Norrell to combat online counterfeiters who are improperly advertising, marketing, or selling goods (the "Infringing Goods") using unauthorized identical or substantially similar copies or derivatives of the protectable elements of Norrell's photographs depicting the Aurora and the Sunburst Necklaces, which are covered by U.S. Copyright Office Registration Nos. VA0002325264 and VA0002329455 (collectively, the "Works"). True and correct copies of the registration certificates for the Works are attached as **Exhibit 1**.

2.      Defendants copied Norrell's Works to sell the Infringing Goods based on the Works made by Norrell. True and correct copies of Defendant's Infringing Goods on their stores are attached as **Exhibit 2**. When viewed side-by-side, the conclusion that a substantial similarity exists between the infringing work and the protectable elements of the copyrighted Work:

| Copyrighted Photographs | Defs.' Sample No. 1 | Defs.' Sample No. 2 |
|---|---|---|
|  |  |  |
|  |  |  |
|  |  |  |

3.     Defendants' copying goes far beyond the fact that both involve the moon necklace; Defendants directly copied Norrell's photographs from the Works, including arbitrary elements for which there can be no explanation other than stealing.

4.     Norrell welcomes fair competition. Through this action, she does not seek to stop others from creating jewelry, or to stop merchants from creating their own original photographs depicting their jewelry. But she cannot tolerate Defendants' blatant replication of the protected expression from her creative Works. There is no excuse. Due to Defendants' willful infringement, Norrell has no choice but to file this lawsuit and seek injunctive relief, damages, and other relief for Defendants' infringement under the Copyright Act.

### SUBJECT MATTER JURISDICTION

5.     This is an action for copyright infringement arising under the Copyright Act, 17 U.S.C. §§ 101–1511.

6.     This Court has subject-matter jurisdiction over the copyright infringement claims pursuant to 28 U.S.C. §§ 1331 and 1338(a)–(b) as this is an action arising under the laws of the United States and relating to copyrights.

### PERSONAL JURISDICTION & VENUE

7.     Personal jurisdiction exists over Defendants in this District under Texas Civil Practice & Remedies Code § 17.042(1) and (2), or in the alternative, Federal Rule of Civil Procedure 4(k) because, upon information and belief, Defendants regularly do business in Texas and in this District, derive substantial revenue from business transactions in Texas and in this District, and otherwise avail themselves of the privileges and protections of the laws of Texas such that this Court's exercise of jurisdiction over Defendants does not offend traditional notions of fair play and due process. In addition, Defendants' illegal counterfeiting

and infringing actions caused injury to Norrell in Texas and in this District such that Defendants should reasonably expect such actions to have consequences in Texas and in this District, for example:

      **a.**      Defendants accept orders  the Infringing Goods from and offer shipping to Texas addresses located in this District. Screenshots of the shopping cart from Defendants based on their Infringing Accounts allowing the Infringing Goods to be shipped to Austin are reflected in **Exhibit 2**.

      **b.**      Upon information and belief, Defendants were or are systematically directing or targeting their business activities at consumers in the U.S., including those in Texas and this District, through accounts with online marketplaces—such as alibaba.com, aliexpress.us, amazon.ca, amazon.co.uk, amazon.com, eBay.com, Shopify, walmart.com, and wish.com (the "Marketplaces") as well as any and all as yet undiscovered accounts with additional online marketplaces held by or associated with Defendants, their respective officers, employees, agents, servants and all persons in active concert or participation with any of them who own or operate the Merchant Names and Merchant IDs for the respective Marketplaces ("Infringing Accounts")— through which Marketplaces and Infringing Accounts, Defendants target consumers in the U.S., including Texas and this District, by (i) advertising for such consumers to view one or more of each e-commerce store operated by each Defendant, (ii) communicating with consumers regarding their listing for the Infringing Goods (as defined *infra*), (iii) placing orders, receiving invoices, and purchasing the Infringing Goods for delivery into the U.S., including Texas and this District, and (iv) using such

Infringing Accounts as a means for establishing regular business with the U.S., including Texas and this District.

       **c.**      Upon information and belief, Defendants have transacted business with consumers located in the U.S., including Texas and this District, for the sale and shipment of the Infringing Goods.

8.      Venue is proper in this District under 28 U.S.C. §§ 1391(b)(2) and 1400(a) because each Defendant has committed acts of copyright infringement in this District, do substantial business in the District, or may be found in this District.

## THE PLAINTIFF

9.      Plaintiff Kimberly Norrell, doing business as The Dainty Doe, is an individual operating her business at 109 E. 8th St., Georgetown, Texas, 78626 and is the registered owner and author of the Works referred to above and with their federal registrations attached as Exhibit 1.

10.      Norrell is, *inter alia*, a creator and designer of a simple and pretty designs for jewelry made in Texas, including necklaces, earrings, and bracelets. Norrell's products include physical jewelry for which she has taken photographs to sell the items.

11.      Norrell's jewelry is widely available in the United States marketplaces to consumers for a fee and sold through direct sales channels using photographs. Norrell offers for sale and sells its jewelry through online and offline stores, including thedaintydoe.com, its Etsy storefront (https://www.etsy.com/shop/daintydoejewelry), its DoorDash storefront (https://www.doordash.com/store/the-dainty-doe-georgetown-23736966/?pickup=false), and at least three retail stores located in Texas. Norrell has earned a reputation for quality, reliability, and value. Norrell is one of the star sellers on Etsy with an average 4.9-star review.

## PLAINTIFF'S COPYRIGHTS

12.    Norrell's jewelry uses original photographs and illustrations from the original photographer Kimberly Norrell, which are protected by copyrights issued by the U.S. Copyright Office.

13.    As shown in the table below, Norrell's Works are duly registered with the United States Copyright Office with the respective information:

| TITLE & DESCRIPTION | REG. NO. | REG. DATE | IMAGES |
|---|---|---|---|
| Dainty Doe Product Pictures 2020<br>DDO-1 5.9.2020 | VA0002325264 | 10/17/2022 |  |
| Dainty Doe Product Pictures 2020<br>DDO-2 5.9.2020 | VA0002325264 | 10/17/2022 |  |
| DDO-3 4.19.2019 | VA0002329455 | 11/4/2022 |  |

The certificates of registration for the Works and the corresponding images protected by the registrations are attached hereto as **Exhibit 1**.

14.    Plaintiff is the owner of all rights in and to the copyrighted Works as reflected on the certificates of registration, which are valid, subsisting, and in full force and effect.

15.    Norrell's genuine jewelry are widely and legitimately advertised and promoted by Norrell using the Works. For example, Norrell has also been featured in Southern Bride Magazine and on Etsy's Instagram account on November 20, 2021, which features the Works as shown below:



16.    Norrell has used the Works extensively and continuously before Defendants began offering goods bearing unauthorized reproduction or derivative works of one or more of Plaintiff's Works.

17.    Norrell has never granted authorization or permission to Defendants to advertise, market, or promote the Infringing Goods using unauthorized copies of the Works.

### THE DEFENDANTS

18.    Defendants are individuals and business entities who, upon information and belief, reside mainly in the People's Republic of China or other foreign jurisdictions, have

---

[1] etsy, INSTAGRAM (Nov. 20, 2021), https://www.instagram.com/p/CWgOslfMvs2/?utm_source=ig_web _copy_link.

created numerous fully interactive commercial internet stores operating under the online marketplace accounts, and are using their seller aliases for the respective Marketplaces under the corresponding Infringing Accounts identified in **Schedule A**.

19.    Defendants own and operate the Infringing Accounts through which Defendants have engaged in extensive copyright infringement by offering for sale and selling the Infringing Goods on the Marketplaces.

20.    Upon information and belief, Defendants are engaged in business in Texas but have not appointed an agent for service of process.

### OTHER RELEVANT ENTITIES

21.    The Marketplaces (including Alibaba.com, AliExpress.com, Amazon.com, eBay.com, Shopify, Walmart.com, and Wish.com) provide services allowing users to access and offer, sell, and buy goods in various geographic locations. Upon information and belief, the Marketplaces are owned directly or indirectly by:

a.    **Alibaba Cloud Computing (Beijing) Co., Ltd.**—an entity with a registration address in Guang Xi, China—operates the websites located at **Alibaba.com**, **Aliexpress.com**, and affiliated sites;

b.    **Amazon.com, Inc.**—a Washington corporation with a principal place of business at 410 Terry Ave N., Seattle, Washington 98109—operates the websites located at **Amazon.com**, **Amazon.ca**, and affiliated sites;

c.    **eName Technology Co., Ltd.**—an entity with a registration address in Beijing, China—operates the website located at **DHgate.com** and affiliated sites;

d.     **eBay, Inc.**—a California corporation with a principal place of business at 2025 Hamilton Avenue, San Jose, California 95125—operates the websites located at **ebay.com**, **ebay.co.uk**, and affiliated sites;

e.     **Shopify, Inc.**—a Canadian corporation with a principal place of business at 151 O'Connor Street, Ottawa, ON K2P 2L8, Canada—provides services that enable merchants to build and customize online stores, sell in multiple places, manage products, inventory, payments, fulfillment, shipping, business operations, marketing, and advertising, and engage existing and potential customers on websites hosted by Shopify or on a third party website;

f.     **Wal-Mart.com USA, LLC**—a California limited liability company with a principal place of business at 850 Cherry Ave., San Bruno, California 94066—operates the website located at **walmart.com** and affiliated sites; and

g.     **ContextLogic Inc.**—a California corporation with a principal place of business at One Sansome Street, 33rd Floor, San Francisco, California 94104—operates the website located at **wish.com** and affiliated sites.

### THE DEFENDANTS' INFRINGING ACTIVITIES

22.     The success of the Works has resulted in significant counterfeiting. Norrell has identified numerous Defendants who own and operate the Infringing Accounts linked to fully interactive websites on e-commerce sites, including the Marketplaces. Without the authority of Norrell, these Defendants have offer for sale, sell, distribute, and import into the United States copies of the Works through the Infringing Goods to consumers in this District.

23.     Without Norrell's permission or license, Defendants have reproduced, distributed, and sold an undetermined amount of the Infringing Goods with digital copies of

Norrell's copyrighted photographs on the Marketplaces through the Infringing Accounts. Specifically, Defendants are using exact copies, reproductions, or derivative copies of the Works without Norrell's permission through their Infringing Accounts.

24.    Through a simple comparison of the Defendants' Infringing Goods with Norrell's Works, a layman can observe the Defendants' infringement of Norrell's exclusive copyrights as the images are virtually exact duplicates or substantially similar images to Norrell's Work. *Compare* Plaintiff's Works Ex. 1, *with* Defendants' Infringing Goods Ex. 2.

25.    Defendants are using infringements of the Works through the Marketplaces to initially attract online customers and drive them to the Defendants' e-commerce stores operating under the Infringing Accounts.

26.    Upon information and belief, Defendants are actively using, promoting, and otherwise advertising, distributing, selling, or offering for sale substantial quantities of their Infringing Goods without authority to use the copyrighted Works. In so advertising their stores and goods, Defendants improperly and unlawfully use reproductions of the Works or derivatives thereof without Norrell's permission.

27.    Norrell has not licensed or authorized Defendants to use any of the Works.

## THE DEFENDANTS' EVASIVE INFRINGEMENT PRACTICES

28.    Defendants have persisted in creating such online marketplaces and internet stores, like each of Defendant's respective Infringing Account. According to an intellectual property rights seizures statistics report issued by the United States Department of Homeland Security, the manufacturer's suggested retail price of goods seized by the U.S. government in fiscal year 2021 was over $3.3 billion.[2] Internet websites like the Defendants' Infringing

---

[2] U.S. CUSTOMS & BORDER PROTECTION, *Intellectual Property Rights Seizure Statistics: Fiscal Year 2021*, CBP Publication       No. 2018-0922,       at       5       (last       modified       Sept.       29,       2022),

Accounts are also estimated to contribute to tens of thousands of lost jobs for legitimate businesses and broader economic damages such as lost tax revenue every year.

29.    Defendants facilitate sales by designing their e-commerce stores so that they appear to unknowing consumers to be authorized online retailers, outlet stores, or wholesalers selling genuine Norrell jewelry.

30.    Many of the Defendants' e-commerce stores look sophisticated and accept payment in U.S. dollars via credit cards, Western Union, and PayPal. Defendants' e-commerce stores often include images and design elements that make it very difficult for consumers to distinguish such counterfeit sites from an authorized website.

31.    Defendants further perpetuate the illusion of legitimacy by using indicia of authenticity and security that consumers have come to associate with authorized retailers, including the McAfee® Security, Visa®, MasterCard®, and PayPal® logos.

32.    Upon information and belief, Defendants go to great lengths to conceal their identities and often use multiple fictitious names and addresses to register and operate their massive network of Infringing Accounts on the various Marketplaces. For example, it is common practice for counterfeiters to register their domain names or Infringing Accounts with incomplete information, randomly typed letters, or omitted cities or states; many Defendants use privacy services that conceal the owners' identity and contact information; and Defendants regularly create new merchant accounts for continuation of the infringement on various Marketplaces using the identities listed in Schedule A to the Complaint, as well as other unknown fictitious names and addresses.

---

https://www.cbp.gov/sites/default/files/assets/documents/2022-Sep/202994%20-%20FY%202021%20IPR%20Seizure%20Statistics%20BOOK.5%20-%20FINAL%20%28508%29.pdf.

33.    Even though Defendants operate under multiple fictitious names, there are numerous similarities among the Defendants' Infringing Accounts. For example, some of the Defendant marketplace websites have virtually identical layouts, even though different aliases were used to register the respective domain names. In addition, the Infringing Goods for sale in the Defendants' e-commerce stores bear similarities and indicia of being related to one another, suggesting that the Infringing Goods were manufactured by and come from a common source and that, upon information and belief, Defendants are interrelated.

34.    The Defendants' e-commerce stores also include other notable common features, including accepted payment methods, check-out methods, meta data, illegitimate SEO tactics, HTML user-defined variables, domain redirection, lack of contact information, identically or similarly priced items and volume sales discounts, similar hosting services, similar name servers, and the use of the same text and images.

35.    In addition, Defendants in this case and defendants in other similar cases against online counterfeiters use a variety of other common tactics to evade enforcement efforts. For example, counterfeiters like Defendants will often register new online marketplace accounts under new Infringing Accounts once they receive notice of a lawsuit.[3]

36.    Counterfeiters also often move website hosting to rogue servers located outside the United States once notice of a lawsuit is received. Rogue servers are notorious for ignoring take down demands sent by brand owners.[4]

---

[3] U.S. IMMIGRATION & CUSTOMS ENFORCEMENT, *Buyers Beware! ICE HSI & CBP in Boston Warn Consumers About Counterfeit Goods During Holiday Shopping Season* (last updated Dec. 12, 2019), https://www.ice.gov/news/releases/buyers-beware-ice-hsi-and-cbp-boston-warn-consumers-about-counterfeit-goods-during (noting counterfeiters are "very adept at setting up online stores to lure the public into thinking they are purchasing legitimate goods on legitimate websites").

[4] *Cf.* Counterfeit Drugs: Fighting Illegal Supply Chains, Hearing Before Subcommittee on Oversight & Investigations of the Committee on Energy & Commerce, 113th Cong., 2nd Sess., No. 113-120 (Feb. 27, 2014), https://www.govinfo.gov/content/pkg/CHRG-113hhrg88828/html/CHRG-113hhrg88828.htm (discussing rogue internet servers and sellers in the context of false pharmaceutical supply chains as a well-known tactic).

37.     Counterfeiters also typically ship products in small quantities via international mail to minimize detection by U.S. Customs and Border Protection. A 2021 U.S. Customs and Border Protection report on seizure statistics indicated that the Internet has fueled a sharp increase in the number of small packages of counterfeit goods shipped through the mail and express carriers as opposed to larger shipping containers.[5]

38.     Further, counterfeiters such as Defendants typically operate multiple credit card merchant accounts and PayPal accounts behind layers of payment gateways so that they can continue operation despite enforcement efforts.

39.     On personal knowledge and belief, Defendants maintain off-shore bank accounts and regularly move funds from their PayPal accounts to off-shore bank accounts outside the jurisdiction of this Court. Indeed, analysis of PayPal transaction logs from previous similar cases indicates that offshore counterfeiters regularly move funds from U.S. based PayPal accounts to foreign-based bank accounts outside the jurisdiction of this Court.

40.     Defendants, without any authorization or license from Plaintiff, have knowingly and willfully used and continue to use the Works in connection with the advertisement, distribution, offering for sale, and sale of the Infringing Goods into the United States and Texas over the Internet.

41.     Each Defendant through the Infringing Accounts offers shipping to the United States, including Texas (in this District); and, upon information and belief, each Defendant has offered to sell the Infringing Goods into the United States, including Texas (in this

_____

[5] U.S. CUSTOMS & BORDER PROTECTION, *supra* Note 2, at 23 ("While e-commerce shipments pose the same health, safety, and economic security risks as containerized shipments, due to the complex and dynamic nature of the industry, CBP lacks full visibility into the e-commerce supply chain. The overwhelming volume of small packages also makes CBP's ability to identify and interdict high risk packages difficult. Further, vague and inaccurate electronic data provided by certain trade entities poses significant challenge when targeting shipments.").

District), which is likely to cause and has caused confusion, mistake, and deception by and among consumers and is irreparably harming Norrell.

## CAUSES OF ACTION

### COUNT I
### COPYRIGHT INFRINGEMENT (17 U.S.C. § 501)
### [Against Defendants Designated in Schedule A]

42.     Norrell incorporates by reference the allegations in Paragraphs 1-41 above.

43.     Norrell has a copyright registration for the Works in Registration Nos. VA0002325264 and VA0002329455.

44.     Norrell owns all exclusive rights in the Works, including the rights to reproduce the copyrighted Works in copies, to prepare derivative works based upon the copyrighted Works, and to distribute copies of the copyrighted Works to the public by sale or other transfer of ownership, or by rental, lease, or lending.

45.     Norrell's copyrights are valid and enforceable.

46.     Without Norrell's authorization, Defendants have sold, offered to sell, marketed, distributed, advertised, and imported, and are still selling, offering to sell, marketing, distributing, advertising, and importing products in connection with the Works.

47.     Defendants had access to Norrell's jewelry incorporating the copyrighted Works before Defendants created the Infringing Accounts because it was published on Norrell's website and on other places on the Internet.

48.     Defendants have directly copied Norrell's copyrighted Works and displayed it in connection with their sale of the Infringing Goods on the Marketplaces under their respective Infringing Accounts. In the alternative, Defendants' representations of Norrell's Works for its jewelry in the Infringing Accounts are strikingly similar, or at the very least

substantially similar to the Works, and constitute unauthorized copying, reproduction, distribution, creation of a derivative work, or public display of Norrell's copyrights for the Works.

49.    In copying Norrell's Works without authorization, Defendants' exploitation of Norrell's copyrights for the Works in the Infringing Accounts constitutes infringement of Norrell's copyrights under 17 U.S.C. § 501.

50.    Upon information and belief, Defendants' infringing acts were willful, deliberate, and committed with prior notice and knowledge of Norrell's copyrights. Each Defendant willfully, wantonly, and in conscious disregard and intentional indifference to the rights of Norrell made and distributed, caused to be made and distributed, and aided, abetted, contributed to, and participated in the unauthorized making and distribution of the Infringing Goods in the United States, including this District.

51.    Each Defendant either knew, or should have reasonably known, that Norrell's Works were protected by copyright and that their actions infringed on Norrell's copyrights. Each Defendant continues to infringe upon Norrell's rights in and to the various copyrighted works.

52.    Pursuant to 17 U.S.C. § 502, Norrell is entitled to, and may elect to choose, from the Court temporary, preliminary, and final injunctions on such terms that the Court may deem reasonable to prevent or restrain infringement of the copyrights, including enjoining any use or exploitation by Defendants of their infringing works.

53.    Pursuant to 17 U.S.C. § 503, Norrell is entitled to, and may elect to choose, an order that Defendants' infringing goods and articles be impounded and destroyed.

54.    As a direct and proximate result of their wrongful conduct, Defendants have realized and continue to realize profits and other benefits rightfully belonging to Norrell. Accordingly, pursuant to 17 U.S.C. § 504(a), Norrell seeks an award of the actual damages suffered as a result of the infringement by Defendants.

55.    In addition to actual damages, pursuant to 17 U.S.C. § 504(b), Norrell seeks an award of any profits of the Defendants that are attributable to the infringement. Each Defendant should be required to account for all gains, profits, and advantages derived by each Defendant from their acts of infringement.

56.    In the alternative, pursuant to 17 U.S.C. § 504(c), Norrell may elect to choose statutory damages, which should be enhanced by 17 U.S.C. § 504(c)(2) because of Defendants' willful copyright infringement.

57.    Pursuant to 17 U.S.C. § 505, Norrell seeks to recover reasonable attorneys' fees and costs of suit.

58.    By reason and as a direct result of these acts of copyright infringement by Defendants, Norrell has no adequate remedy at law, and, if Defendants' actions are not enjoined, Norrell will continue to suffer significant and irreparable harm to its reputation and the goodwill of its Works.

## REQUEST FOR RELIEF

For the foregoing reasons, Plaintiff Norrell respectfully requests that this Court grant the following relief against Defendants and each of them as follows:

1.    Declaring that each Defendants' reproduction and display of the Works infringes Plaintiff's copyright registration;

2.    Declaring that each Defendant's conduct was knowing, intentional, and willful;

3.    Ordering that each Defendant and each Defendant's affiliates, officers, agents, servants, employees, attorneys, confederates, and all persons acting for, with, by,

through, under, or in active concert with them or participation with or at the behest or direction of any of the foregoing, be temporarily, preliminarily, and permanently enjoined and restrained from:

a.  Using the Works or any reproductions, counterfeit copies, or colorable imitations thereof in any manner in connection with the advertising, displaying, distributing, selling, manufacturing, delivering, shipping, using, or enabling others to advertise, display, distribute, manufacture, deliver, ship, sell, or use any copies or derivative works based on Plaintiff's Works, other colorable imitations of Plaintiff's Works, or products and designs that otherwise infringe on Plaintiff's copyright registrations;

b.  Passing off, inducing, or enabling others to sell or pass off any product as a genuine Norrell product or any other product produced by Norrell that is not Norrell's or not produced under the authorization, control, or supervision of Norrell and approved by Norrell for sale under the copyrights;

c.  Committing any acts calculated to cause consumers to believe that Defendants' Infringing Goods are those sold under the authorization, control, or supervision of Norrell, or are sponsored by, approved by, or otherwise connected with Norrell;

d.  Further infringing the copyrights and damaging Norrell's goodwill;

e.  Otherwise competing unfairly with Norrell in any manner;

f.  Moving, relocating, or otherwise disposing of any funds currently located in Defendants' online accounts, including from Alibaba, AliExpress, Amazon, Bonanza, DHgate, eBay, Etsy, Joom, Walmart, Wish, Alipay, PayPal, Payoneer, WorldFirst, and Western Union;

g.  Shipping, delivering, holding for sale, transferring, or otherwise moving, storing, distributing, returning, or otherwise disposing of, in any manner, products or inventory not manufactured by or for Norrell, or authorized by Norrell to be sold or offered for sale, and which copy the Works protected by Norrell's copyrights or any reproductions, counterfeit copies, derivative work, or any works substantially similar to the Plaintiff's copyrights;

h.  Using, linking to, transferring, selling, exercising control over, or otherwise owning any online marketplace accounts, the Infringing Accounts, or any other domain name or online marketplace account that is being used to sell or is the means by which Defendants could continue to sell the Infringing Goods;

i.  Removing, destroying, or otherwise disposing of computer files, electronic files, business records, or documents relating to any of Defendants' webstores, websites, assets, operations, or relating in any way to the reproduction and display of the Works; and

j.   Operating or hosting websites at the Infringing Accounts that are involved with the distribution, marketing, advertising, offering for sale, or sale of any product embodying the Works or any reproduction, counterfeit copy, or colorable imitation thereof that is not a genuine Norrell product or not authorized by Norrell to be sold in connection with the Works.

4.   Ordering that all Infringing Goods in Defendants' reasonable control be deleted or destroyed pursuant to 17 U.S.C. § 503(b);

5.   Ordering that the Marketplaces, including Alibaba, AliExpress, Amazon, eBay, Etsy, Walmart, Wish, and any other online marketplace account provider through which Defendants are selling the Infringing Goods, and the payment processors, including Alipay, PayPal, Payoneer, WorldFirst, Western Union, or other bank accounts or payment processors used by the Defendants (each of the foregoing e-commerce platform providers and payment processors, a "Third Party Provider"):

a.   Take all steps to prevent any Defendant from accessing or withdrawing funds from any accounts through which the Defendants, in the past, currently, or in the future, engage in the use of the Design and advertisement and sale of the Infringing Products, including, but not limited to, any accounts associated with the Defendants listed on the attached Schedule A;

b.   Disable and cease displaying any advertisements used by or associated with Defendants in connection with the sale of the Infringing Goods; and

c.   Take all steps necessary to prevent any Defendant from accessing or withdrawing funds from any accounts linked to the Defendants, linked to any email addresses used by the Defendants, or linked to any of the Infringing Webstores.

6.   Ordering that Defendants account for and pay to Norrell all damages, including actual damages and profits, realized by Defendants by reason of Defendants' unlawful acts herein alleged.

7.   In the alternative, that Norrell be awarded statutory damages of not more than $30,000 for each and every infringement of the Works pursuant to 17 U.S.C. § 504(c), which should be enhanced to a sum of not more than $150,000 by 17 U.S.C. § 504(c)(2) because of Defendants' willful copyright infringement;

8.   That Norrell be awarded its reasonable attorneys' fees and costs pursuant to 17 U.S.C. § 505; and

9.   Granting Norrell such other and further relief as the Court may deem just and proper.

Dated:   March 6, 2023                     Respectfully,


**JAMES H. CREEDON**
Texas Bar No. 24092299
jhcreedon@creedon.com
**CHRISTIAN COWART**
Texas Bar No. 24105748
ccowart@creedon.com
**CHARLES A. WALLACE**
Texas Bar No. 24110501
cwallace@creedon.com

**CREEDON PLLC**
5 Cowboys Way, Suite 300
Frisco, Texas 75034
Tel:    (972) 850-6864
Fax:    (972) 920-3290


**COUNSEL FOR PLAINTIFF**
**KIMBERLY NORRELL**